**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LARRY DEVEL STEWART,

       Petitioner,                Civil No. 2:15-CV-11843
                                 HONORABLE GERALD E. ROSEN
v.                            UNITED STATES DISTRICT JUDGE

THOMAS MACKIE,

       Respondent,

_____/

### OPINION AND ORDER CONDITIONALLY GRANTING
### THE PETITION FOR WRIT OF HABEAS CORPUS

      Larry Devel Stewart, ("Petitioner"), incarcerated at the Oaks Correctional Facility in Manistee, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree felony murder, M.C.L.A. 750.316(1)(b); armed robbery, M.C.L.A. 750.529; conspiracy to commit armed robbery, M.C.L.A. 750.157a, 750.529; and felony-firearm, M.C.L.A. 750.227b.

      The Court finds that petitioner was denied his due process right to a fair trial by the pervasive and flagrant misconduct of the prosecutor throughout the trial. For the reasons stated below, the petition for writ of habeas corpus is **CONDITIONALLY GRANTED**.

### I. Background

      Petitioner Larry Devel Stewart was convicted following a jury trial in the Macomb County Circuit Court, in which he was tried jointly with co-defendant Renyatta Hamilton.[1]

_____

    [1] Ms. Hamilton filed her own petition for writ of habeas corpus, which was held in abeyance to permit her to return to the state courts to exhaust additional claims. *See Hamilton v. Stewart,* No. 2:15-CV-12709 (E.D. Mich. Aug. 13, 2015)(Murphy, J.).

At trial, the prosecution presented evidence to establish that Stewart "ambushed and shot Kevin Brown in a botched robbery attempt that was set up when his girlfriend and co-defendant, Renyatta Hamilton, lured Brown to the apartment complex where she was staying. Brown sustained four gunshot wounds in the incident and later died from his injuries." *People v. Stewart*, No. 313097, 2014 WL 1233946, at *1 (Mich. Ct. App. Mar. 25, 2014). Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 882, 854 N.W.2d 714 (2014).

Petitioner has filed a petition for a writ of habeas corpus on the following grounds:

I. The prosecutor violated due process and the Fifth Amendment right to silence by referencing Mr. Stewart's post-*Miranda* silence and request for counsel, contrary to *Doyle v. Ohio*.

II. The trial court violated Mr. Stewart's Sixth Amendment right to confront witnesses by denying the motion for severance or separate juries and by subsequently admitting Renyatta Hamilton's inadequately-redacted police statements without a proper limiting instruction.

III. Reversal is required where the prosecution failed to prove beyond a reasonable doubt that Mr. Stewart was involved in a conspiracy, or that he acted with the malice required for felony murder.

IV. The trial court committed plain error in failing to instruct the jury on the factually-supported lesser included offense of involuntary manslaughter.

V. Pervasive flagrant and ill-intentioned prosecutorial misconduct throughout this trial violated Mr. Stewart's due process rights and requires reversal.

VI. Defense counsel was constitutionally ineffective for failing to object to the prosecutor's *Doyle* violation, erroneous jury instruction, and to the failure to instruct the jury on involuntary manslaughter.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

2

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit

3

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

The Court finds it unnecessary to address all of the claims raised by petitioner; instead, the Court will focus on  petitioner's second and fifth claims alleging Sixh Amendment confrontation violations and prosecutorial misconduct because these claims form the basis upon which habeas relief is being granted.

A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

This Court understands that "claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)).  However, even when

4

reviewed in a light most favorable to the state, the prosecutor's insertion of matters not supported by the evidence, his disregard for the trial court's rulings, and his pervasive and inflammatory comments and questions throughout the trial were so egregious and unprofessional, that they deprived petitioner of his right to a fair trial.

Petitioner first argues that the prosecutor committed misconduct by asking petitioner on cross-examination to comment on the credibility of prosecution witnesses. Petitioner points to the following questions by the prosecutor:

Q. [Prosecutor]: So everybody is lying here except you? Bryan May is a liar, right?

A. [Petitioner]: Yes, he is.

Q: Bryan May, you don't even know him. You've never had any fight with him, have you?

A: Yeah. We've had a couple altercations, a little animosity towards each other. We don't care for each other too much.

Q: Okay. So you think he came out here under oath to lie on you because of some prior animosity?

A: Yes, I would. Because anything that would get him off or get him out of the limelight as being a suspect, I would believe he would do.

(Tr. 7/24/12, p. 57).

The prosecutor continued this theme in his closing argument:

But aside from what we heard this morning and the inconsistencies and the reasons and that everybody is a liar except him.  Bryan May is not telling the truth, Rocho is not telling the truth, nobody is telling the truth.  Just him, okay?  And then when I confront him on the fact that what he's trying to tell you is on the video, is not on the video, he doesn't want to watch the video. I'll show you it's not on the video.

(*Id.,* p. 97).

The prosecutor's questioning of petitioner on cross-examination about whether

5

various prosecution witnesses were lying was improper, since a prosecutor generally cannot ask a witness to comment on the credibility of other witnesses. *See United States v. Dickens*, 438 F. App'x 364, 369–70 (6th Cir.2011)(collecting cases). "[T]he general principle that credibility determinations are meant for the jury, not witnesses, applies here, and the prosecutor's questions were improper." *Id.* at 370. It is also improper for a prosecutor to argue that the jury would have to find that the prosecution witnesses deliberately lied in order to acquit the defendant. *See Hodges v Hurley*, 426 F 3d 368, 380 (6th Cir. 2005); *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir.1990) (error occurs when a prosecutor argues that an acquittal requires its witnesses to be disbelieved and the defense witnesses to be believed). Such arguments, in effect, leave little or no room for the jury to "return a verdict of not guilty [simply] because the evidence might not [otherwise] be sufficient to convict defendant beyond a reasonable doubt." *United States v. Vargas*, 583 F.2d 380, 386-87 (7th Cir. 1978).The prosecutor's questions and arguments here were clearly improper.

Next, petitioner claims that the prosecutor misrepresented the evidence and argued facts that had not been introduced into evidence. Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (*quoting Donnelly v. DeChristoforo*, 416 U.S. at 646). Here, throughout the trial, the prosecutor misstated facts, put words into the mouths of witnesses and assumed prejudicial facts not in evidence.

First, the prosecutor went beyond cross-examination of petitioner and essentially "testified" as to unverified off-record "facts" when he disagreed with petitioner's

6

characterization of his initial statement to the police following his arrest:

> A [by Petitioner]:  I made a statement to Detective Quinn and told him that what y'all -- what I'm being charged with is not what happened.

> Q [by Prosecutor]:  Okay.

> A:     There was a fistfight and this man pulled a gun on me.

> Q:     *Nope. Nope. Nope.  All you told Detective Quinn was it didn't go down that way.*

> A:     I told them --

> Q:     When you wanted to talk, you wanted to talk and then you lawyered up.  That's what you did. . . .

> A:     No.

> Q:     . . . Do you want to see the video?

> A:     No.

> Q:     They've got you in the room. They are giving you *Miranda.*  You say, that's not how it happened.  I want to tell you how it happened but I want a lawyer.  So they take you all the way back to the jail cell and you say, well, what if that's not how it happened?  And they say, do you want to talk?  And you said, yeah, let's get this done.  You walked all the way back with them to the interview room.  They put you in the interview room,  the go to Mirandize you again and you said, nope.  I want a lawyer.  That's what you did, right?

> ***

> A:     I was telling them that there was never a robbery.  That is not how it happened.

> Q:     *I didn't hear that in the video.  I just heard you say it didn't go down that way.  What if it didn't go down that way is how you said it and that was all you said.*

> ***

> Q:     You didn't get that far.  Are you creating? Do you want to see the video?

A:     No.  I don't want to see the video.

Q:     We can play the video.  There is two of them.  You can see, *the jury can see that you didn't say squat about that.*

(Tr. 7/25/12 pp. 71-73 (emphasis added)).

There was hardly a question amongst the prosecutor's comments.  The colloquy comprised nothing more than the prosecutor relaying to the jury what he believed the facts to be -- facts that allegedly were contained in a video recording *that was never presented as evidence*.  By essentially testifying to these extra-record facts, the prosecutor became an unsworn witness whom petitioner had no ability to cross-examine.

Then during closing argument, the prosecutor misrepresented the substance of statements made by petitioner's co-defendant, Renyatta Hamilton, that were admitted, and also introduced portions of those statements that the trial judge had explicitly excluded in a redaction ruling made in an attempt to comply with *Bruton v. United States,* 391 U.S. 123 (1968).

In *Bruton*, the Supreme Court held that a defendant is denied the constitutional right of confrontation where a non-testifying co-defendant's incriminating confession is admitted at a joint trial.  391 U.S. at 127-28.  In this case, aware of the *Bruton* implications of Renyatta Hamilton's statements to the police, petitioner's counsel moved, prior to trial, for a separate trial to prevent the admission of the statements Hamilton made. (Tr. 7/9/12, pp. 1-5).  The judge denied the motion, but ruled that, at the joint trial, Hamilton's statements would be admitted against her only, and that he would not admit the parts of the statements "that would affect [petitioner]." (*Id.,* pp. 4-6).  Then later, before the police officers testified, the judge made additional attempts to redact Hamilton's statements to

8

avoid any references to petitioner. (Tr. 7/20/12, pp. 12-43, Tr. 7/24/12, pp. 2-17).

Two police officers, Detective Jeffrey Barbera and Officer Curtis Randall, thereafter testified to portions of the statements that Hamilton made, subject to the trial court's attempts at redacting them to comply with *Bruton*.  Over defense objection, Detective Jeffrey Barbera testified that at the crime scene, Hamilton told him that she had heard a struggle outside her apartment and was shot through the wall.  Hamilton did not mention petitioner's name. (Tr. 7/20/12, pp. 54-55).  Hamilton was later interviewed at the hospital three times, the last time after she was arrested.  Detective Barbera testified that in those statements, Hamilton admitted that she knew Mr. Brown from meeting him at McDonald's a few weeks earlier and that she and Brown had made plans for him to pick her up at the apartment the morning of the shooting to go out.  Hamilton informed Detective Barbera that petitioner was her boyfriend but they were either dating other people or had broken up, during which time Hamilton had gone out with Mr. Brown once or twice.  Hamilton stated that she had spoken with both Mr. Brown and petitioner in the hours and minutes before the shooting, and that she had spoken twice with petitioner afterward.  Over objection, Barbera testified that Hamilton stated when she and petitioner were at the apartment the night before, she noticed the butt of a gun sticking out of his clothes.  In the last interview, Barbera told Hamilton, "it really looks like you lured Brown to the complex to rob him" to which Hamilton replied "I know how it looks but there was no plan to rob him." (Tr. 7/20/12, pp. 61-64, 75-85).

Officer Curtis Randall also was permitted to testify that during the last interview with police at the hospital, Hamilton again described the exchange of phone calls between her, Mr. Brown, and petitioner before and after the shooting.  Hamilton also informed Officer

9

Randall how she had met the victim a few weeks before the shooting and that he
appeared to have a lot of money because he would "flash" it a lot.  Hamilton also
reportedly said numerous times that "it wasn't supposed to go down like this." (Tr. 7/24/12,
pp. 23-24).

      In his closing arguments, the prosecutor then made the following remarks about
Ms. Hamilton's statements:

> You have their statements.  Their statements are direct evidence about
> Renyatta Hamilton specifically saying it wasn't supposed to happen that
> way.  "My job was to get Kevin Brown to be in the apartment."  And she's
> inside pacing.

(Tr. 7/24/12, p. 85).

The prosecutor further stated:

> That was when Mr. Stewart did the act that caused the death of Kevin Lionel
> Brown, the defendant was committing or attempting to commit or in
> Renyatta Hamilton's statement, "helping someone else commit" the crime
> of armed robbery.

(*Id.*, pp. 88-89).

The prosecutor made a third reference to Ms. Hamilton's statements:

> [Ms. Hamilton] then coordinates the assault first through Stewart.  Stewart
> is in and out of the apartment.  And I think one of the most damning things
> is the timing of those phone calls because she is coordinating.  That's her
> role.  When she tells Sergeant Randall and Detective Furno that she was to
> get him to the apartment what do you think she's doing?

(*Id.*, p. 92 (some internal punctuation added)).

The prosecutor's comments here were inappropriate for several reasons.

      First, the trial judge had ruled prior to trial that Ms. Hamilton's statements could not
be used against petitioner at trial, in order to avoid a *Bruton* problem.  The trial court also
attempted -- unsuccessfully in this Court's opinion -- to redact Hamilton's statements to

10

avoid any references to petitioner.  Nevertheless, regardless of whether or not these statements were successfully redacted, the judge had specifically ruled that Hamilton's statements could not be introduced against petitioner, and the prosecutor's use of the statements amounted to arguing facts which had not been introduced into evidence, in direct circumvention of the trial judge's ruling.  Secondly, the prosecutor's remarks mischaracterized the substance of Ms. Hamilton's statements that were admitted.

The redacted statements contained no comments that Ms. Hamilton admitted it was her "job" or responsibility to "get" or entice Mr. Brown to the apartment as part of a plan with petitioner.  There was no testimony that Ms. Hamilton admitted to helping someone else commit a robbery, as the prosecutor misleadingly stated.  The Michigan Court of Appeals, in fact, acknowledged that it was improper for the prosecutor to refer to Ms. Hamilton's redacted statements, because they had not been introduced into evidence:

> A prosecutor may not argue facts not in evidence.  Here the prosecutor clearly committed misconduct by arguing facts that were not in evidence because Hamilton's statements referenced above were expressly excluded by the trial court.  The prosecutor should have known not to refer to Hamilton's redacted statements because the trial court expressly excluded these statements, and the prosecutor even sought confirmation about what was excluded.

*People v. Stewart*, 2014 WL 1233946 at *9 (Mich. App. Mar. 25, 2014) (citations omitted). However, in spite of "this clear misconduct," the Michigan court found that petitioner was not entitled to relief under plain error review.  *Id.*

Furthermore, the prosecutor's use of Hamilton's out-of-court statements to urge the jurors to convict petitioner violated the dictates of *Bruton*.  A prosecutor may commit a *Bruton* violation during summation by encouraging a jury to interpret redacted portions of a non-testifying co-defendant's statement in a way that implicates a defendant. *See Bowen*

11

*v. Phillips*, 572 F. Supp. 2d 412, 420 (S.D.N.Y. 2008)(citing *Ruiz v. Kuhlmann*, 80 F. App'x 690, 693 (2d Cir. 2003)).  The prosecutor's repeated references to Hamilton's statements here were clearly designed to encourage the jurors to use them as substantive evidence to convict petitioner.

For all of these reasons, the Court concludes that the prosecutor's conduct with respect to the non-testifying co-defendant's statements violated petitioner's Sixth Amendment right to confrontation as well as the judge's ruling that the statements could not be introduced against petitioner.

Petitioner next argues that the prosecutor improperly argued that Brown was a "loving son" and uncle, and had a "loving family," when there was no record evidence to support those claims.  The prosecutor argued during closing:

> I gave you a quote at the beginning of this trial from the movie Gladiator. The full quote: "is Rome worth one good man's life? We believed it once." The rest of it is: "Make us believe it again. He was a soldier of Rome. Honor him."
>
> I don't know that Kevin Brown was a soldier, but I know that he was an uncle, he was a brother and he was a son. He has a loving family. He was someone. I ask you to honor him. I ask you to convict these two of having planned a robbery and robbed him and murdered him.
>
> (*Id.*, pp. 101-02).

The Michigan Court of Appeals acknowledged that these remarks were also improper but held that petitioner was not entitled to habeas relief under plain error review. *People v. Stewart*, 2014 WL 1233946, at * 10.

"Closing arguments that encourage juror identification with crime victims are improper." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).  "Similarly, a prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions

and fears-rather than the evidence-to decide the case." *Id.*  The prosecutor's repeated

appeals to the juror's sympathy for the victim were improper.

Petitioner next contends that the prosecutor vouched for the credibility of the

witnesses and for petitioner's guilt.  Petitioner points to the following statements by the

prosecutor in his closing argument:

> Regarding petitioner's testimony, the prosecutor stated:
>
> Mr. Brown did not shoot himself, per Mr. Stewart, Mr. Stewart being a small guy, it appears that he was able to overpower Mr. Brown and wrestle with Mr. Brown and he put those four shots into Mr. Brown. I don't really think that's how it happened.
>
> (Tr. 7/24/12, pp. 84-85).
>
> The prosecutor continued:
>
> I don't get Mr. Stewart's testimony. I don't get -- I guess, I don't get how an innocent man leaves the scene. I don't get how an innocent man doesn't want to tell the police their side of the story. I don't get why you've got a brand new shoe and you just simply run away from that shoe.
>
> (*Id.*, p. 96).
>
> Then later, the prosecutor stated:
>
> I don't think you could have a through-and through with a .357 and not know it. I think it's a complete lie.
>
> (*Id.*, p. 101).

The prosecutor also expressed his personal views on Ms. Hamilton's alleged

involvement in the crime and, by inference, her conspiracy with petitioner:

> Again, [Ms. Hamilton] knows Kevin Brown from work. She's the one that initiates contact. It's clear to me she's not interested in rekindling that relationship. The motive is robbery and then as we found out today from Officer Sergeant Randall, he flashed money.
>
> (*Id.*, p. 90).

13

The prosecutor continued:

Next. I just find it incredible what [Ms. Hamilton's] actions are after she's shot.  You heard Bryan May indicate that Justin came flying out of his room when he heard the gunshots. What's the first thing Renyatta tells Justin? Get back into your room.  She's shot in the gut with a .357 and she's telling Justin to go back into the room?

* * *

The next category. And I find this just as odd. She's shot and she's doing absolutely nothing to tend to her own wounds.

* * *

Next. The fact that she changes stories, I think, is very difficult for me.

(*Id.*, pp. 94-95).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).  The Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not

14

isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

In the present case, the prosecutor flagrantly and repeatedly expressed his personal opinion as to the credibility of the witnesses, the strength of the evidence, and/or petitioner's guilt.

Petitioner finally argues that the prosecutor denigrated defense counsel while addressing the flight instruction during rebuttal, when the prosecutor stated that defense counsel's remarks about the flight instruction was the "kind of defense tactic crap I can't stand." (Tr. 7/24/12, p. 118).

Attorneys may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir.2008).   The prosecutor's inflammatory attack on defense counsel suggested that defense counsel was attempting to mislead or trick the jury and was thus improper.

Here, the prosecutor's conduct of the entire trial was not merely unprofessional and far beyond the bounds of acceptable vigorous advocacy -- although it certainly was (*see* ABA Model Rules of Professional Conduct, Rules 3.3, 3.4, 3.5, 3.8) -- it was beyond constitutional pale.   Although each of the prosecutor's comments or questions by themselves, in isolation, may not be sufficient to grant habeas relief, the prosecutor's flagrant and repeated incidents of misconduct permeated the entire trial and were hardly inadvertent slips-of-the-tongue or isolated incidents.   Rather, they were intentional, misleading, and cumulatively highly inflammatory and prejudicial.

Beyond this, the prosecutor's misconduct had the effect of violating  petitioner's Sixth Amendment confrontation rights. By flagrantly ignoring the trial judge's rulings

15

2:15-cv-11843-GER-EAS   Doc # 9   Filed 07/12/16   Pg 16 of 19   Pg ID 1324

regarding redaction and the limited use of the statements of petitioner's non-testifying co-defendant Renyatta Hamilton, and by inserting accusatory information outside of the evidentiary record, the prosecutor deprived petitioner of the right to confront this information.  Despite the trial judge's best efforts, the prosecutor repeatedly referenced co-defendant Hamilton's statements in closing without specifying whom they could be used against, and he clearly implied that Hamilton's police statements were evidence of petitioner's involvement in the plot to set up and rob Kevin Brown.  In light of this, there is more than a reasonable probability that the prosecutor's misuse of Ms. Hamilton's statements contributed to the verdict.

The cumulative effect of the prosecutor's improper, unprofessional and inflammatory behavior throughout the trial was so flagrant and severe that the Court is constrained to find that petitioner is entitled to habeas relief. *See Gumm v. Mitchell*, 775 F.3d 345, 382-83 (6th Cir. 2014).

In *Boyle v. Million,* 201 F. 3d 711, 717 (6th Cir. 2000), the Sixth Circuit held that habeas relief was warranted on a habeas petitioner's prosecutorial misconduct claim, despite the relatively strong evidence against the petitioner, in light of the fact that the prosecutor's misconduct was flagrant, was intended to mislead and prejudice the jury, and the improprieties infected all aspects of the trial, such that the error could not be deemed harmless.  In light of "the egregious and inflammatory nature" of the behavior and arguments of the prosecutor throughout trial, the Sixth Circuit was left with "grave doubt" as to whether the prosecutorial errors had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 718.

When a federal court judge in a habeas proceeding is in "grave doubt" about

16

whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must win. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). The focus in such a situation is not merely whether there is enough evidence to support the result, apart from the phase affected by the error. It is, rather, whether the error itself has substantial influence. If so, or if a judge is left in grave doubt, the conviction cannot stand. *O'Neal,* 513 U.S. at 438.

In the present case, this Court, at the least, has grave doubt about the viability of the jury's verdict. The cumulative impact of the prosecutor's serial misconduct in this case upon the jury's consideration of the evidence is such that the Court believes it is highly likely that the misconduct had a substantial and injurious effect or influence upon the jury's verdict. First, as indicated, the prosecutor's misconduct was flagrant and severe and pervaded the entire trial proceedings and was designed to prejudice the jurors against petitioner. Secondly, much of the case against petitioner was circumstantial. There were no persons who actually witnessed petitioner shooting the victim during an armed robbery. Petitioner, in fact, claimed that it was the victim who initially pointed a gun at him and that the victim must have accidentally shot himself while the two men were struggling over the gun. (Tr. 7/24/12, pp. 51-52, 56, 62, 70-71, 76-77). Several witnesses believed that they saw the victim in possession of a firearm. (Tr. 7/18/12, pp. 100-102, 107-108, 110, 116, Tr. 7/19/12, pp. 73-75-76, 104-105, 112-113). In light of the competing evidence in this case, this Court does not believe that the pervasive prosecutorial misconduct in this case was harmless.

In sum, this Court concludes that the prosecutorial misconduct in this case was highly prejudicial, pervasive, and deprived petitioner of a fair trial. "[I]n a close credibility

17

contest such as this, with horrible acts alleged but scant hard evidence for the jury to weigh, a prosecutor must be doubly careful to stay within the bounds of proper conduct." *Washington,* 228 F. 3d at 709.  Accordingly, the Court will grant a conditional writ of habeas corpus, giving the State of Michigan ninety days in which to provide petitioner a new trial or release him. *Id.*

Because the Court's conclusion that petitioner is entitled to habeas relief on these Sixth Amendment and prosecutorial misconduct claims is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *aff'd,* 453 F. 3d 362 (6th Cir. 2006); *cert. den.,* 127 S. Ct 1832 (2007).

## IV. ORDER

For all of the reasons set forth above in this Opinion and Order,

**IT IS HEREBY ORDERED** that Petitioner's application for writ of habeas corpus is CONDITIONALLY GRANTED.   Accordingly, unless the State takes action to afford petitioner a new trial within ninety (90) days of the date of this opinion, Petitioner may apply for a writ ordering Respondent to release him from custody forthwith.


s/Gerald E. Rosen
United States District Judge

Dated:  July 12, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 12, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

19