## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LARRY DEVEL STEWART,

     Petitioner,             Civil No. 2:15-CV-11843

                               HONORABLE TERRENCE G. BERG

v.                         UNITED STATES DISTRICT JUDGE

TONY TRIERWEILER,

     Respondent,

_____/

## OPINION AND ORDER ON REMAND DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

### I. Introduction

This matter is on remand from the United States Court of Appeals for the Sixth Circuit. Larry Devel Stewart, ("Petitioner") is incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan. In 2015 he filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); armed robbery, Mich. Comp. Laws § 750.529; conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a, 750.529; and felony-firearm, Mich. Comp. Laws § 750.227b.

Dkt. 1. The district court (Rosen, J.) conditionally granted the petition on certain claims, Dkt. 9, but the Sixth Circuit reversed and remanded for consideration of the remaining claims. Dkt. 19. On remand the case was assigned to this Court, and Petitioner filed Supplemental Pleadings in support of his original petition. Dkt. 23. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

## II. Background

Petitioner was convicted following a jury trial in the Macomb County Circuit Court, in which he was tried jointly with co-defendant Renyatta Hamilton. The facts relied upon by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> The prosecution presented evidence at trial to establish that defendant ambushed and shot Kevin Brown in a botched robbery attempt that was set up when his girlfriend and codefendant, Renyatta Hamilton, lured Brown to the apartment complex where she was staying. Brown sustained four gunshot wounds in the incident and later died from his injuries.
>
> [. . .]
>
> [At trial] Defendant testified that he told Detective Quinn, "[W]hat I'm being charged with is not what happened," and

that "[t]here was a fistfight and [the victim] pulled a gun on him."

[. . .]

[Petitioner] testified during direct examination that he returned to the apartment where the shooting occurred on the morning of December 19, 2011, to retrieve his shoes, and, once there, fought a heavy-set man with dreadlocks who pulled out a gun that discharged several times.

[. . .]

The trial court admitted into evidence several testimonial statements Hamilton made to Detective Jeffrey Barbera . . . Hamilton told Barbera that she saw [Petitioner] with a gun the evening before the shooting, and that she contacted [Petitioner] and Brown moments before the shooting.

[. . .]

[Petitioner's co-defendant and the witness at whose apartment the shooting took place] agreed that [Petitioner] and Hamilton were both present at [the apartment] on the night of December 18, 2011. [Co-defendant] noticed a gun on a table inside the apartment and said that [Petitioner] wrapped it in a t-shirt later that evening. According to [the co-defendant], Hamilton admonished [Petitioner] to hide the gun . . . Hamilton then hid the gun in her purse and left her pruse on the table. After the shooting the following morning, [the co-defendant] followed Hamilton into the apartment's bathroom, from where she called [Petitioner] and said "Baby, I've been shot." [The co-defendant] knew Hamilton had called [Petitioner] because [Petitioner] was "the only person [the co-defendant] knew that she called baby." Hamilton's cellular telephone records revealed that there were 28 separate contacts between her cellular telephone and [the victim's] cellular telephone between 2:01 p.m. on December 17, 2011,

and 8:41 a.m. on December 19, 2011, the morning of the shooting. In the same period, there were 127 separate contacts between Hamilton's phone and defendant's phone.

*People v. Stewart*, No. 313097, 2014 WL 1233946, at *1, *5 , *6 (Mich.

Ct. App. Mar. 25, 2014). Petitioner's conviction was affirmed on appeal.

*Id., lv. den.* 497 Mich. 882, 854 N.W.2d 714 (2014).

Petitioner sought a writ of habeas corpus on the following

grounds:

I. The prosecutor violated Mr. Stewart's due process and the Fifth Amendment right to silence by referencing his post-*Miranda* silence and request for counsel, contrary to *Doyle v. Ohio*.

II. The trial court violated Mr. Stewart's Sixth Amendment right to confront witnesses by denying his motion for severance or separate juries and then admitting Renyatta Hamilton's inadequately-redacted police statements without a proper limiting instruction.

III. The prosecution failed to prove beyond a reasonable doubt that Mr. Stewart was involved in a conspiracy, or that he acted with the malice required for felony murder.

IV. The trial court committed plain error by failing to instruct the jury on the factually-supported, lesser included offense of involuntary manslaughter.

V. The prosecution violated Mr. Stewart's due process rights by engaging in pervasive, flagrant, and ill-intentioned prosecutorial misconduct throughout his trial.

VI. Defense counsel was constitutionally ineffective by failing to object to the prosecutor's aforementioned *Doyle* violation, erroneous jury instruction, and to the failure to instruct the jury on involuntary manslaughter.

Judge Gerald E. Rosen, the original district court judge in this case, granted Petitioner a conditional writ of habeas corpus on his second and fifth claims, finding that Petitioner was denied a fair trial because of prosecutorial misconduct and a violation of his Sixth Amendment right to confrontation. Judge Rosen declined to address Petitioner's other claims. *See Stewart v. Mackie*, 196 F. Supp. 3d 734 (E.D. Mich. 2016).

The Sixth Circuit reversed the district court's decisions on the second and fifth claims and remanded the case to this court to adjudicate Petitioner's remaining claims. *Stewart v. Trierweiler*, 867 F.3d 633 (6th Cir. 2017); *cert. den.* No. 17-1288, 2018 WL 1317616, at *1 (U.S. May 14, 2018). The remaining claims are therefore Petitioner's first, third, fourth, and sixth claims.

On remand, this case was reassigned to the undersigned upon the retirement of Chief Judge Rosen. On December 21, 2017, this court reopened the case and gave Petitioner ninety days to file a supplemental brief and respondent sixty days from the receipt to file a

supplemental answer, if he so chose. Dkt. 21. Petitioner filed a

supplemental petition on March 19, 2018. Respondent did not file a

supplemental answer.

## III. Standard of Review

Section 2254(d) of Title 28 of the United States Code, as amended

by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

requires the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

A decision of a state court is "contrary to" clearly established

federal law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court on a question of law or if the state court

decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fair-minded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected Petitioner's first claim under a plain error standard because Petitioner failed to preserve the issue as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d at 638.[1]

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because failed to object at trial. Petitioner argues in his sixth claim that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted

# III. Discussion

## A. First Claim:  Whether Petitioner's due process and Fifth Amendment right to remain silent was violated because the prosecutor referred to his post-*Miranda* silence and his request for counsel.

Petitioner contends that the prosecutor impermissibly used his post-*Miranda* silence and his request for counsel against him.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence (i.e. after he or she has been given *Miranda* warnings) to impeach a defendant's exculpatory testimony. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976).  Although the *Doyle* rule was established in the context of a defendant's invocation of *Miranda's* right to remain silent, it also applies to an invocation of the right to counsel. *See Wainwright v. Greenfield*, 474 U.S. 284, 295, n. 13 (1986).

In certain cases, a defendant might open the door for post-arrest silence to be introduced as evidence by the prosecution:

> It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon

claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

arrest.  In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

*Doyle v. Ohio*, 426 U.S. at 619 n. 11 (internal citation omitted)(*citing*

*United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir 1975)).

Petitioner initially points to the following exchange that took place when the prosecutor cross-examined him:

Q [The prosecutor]: You turned yourself in a couple days [after the shooting;] that's the first time you called the police, right?

A [Petitioner]: I didn't even call them then[;] I just turned myself in.

Q: You've never made a statement about this case until just now?

A: You're right. No. Let me take that back.

Q: Oh, please do.

A: I made a statement to Detective Quinn and told him that ... what I'm being charged with is not what happened.

Q: Okay.

A: There was a fistfight and [Brown] pulled a gun on me.

Q: Nope. Nope. Nope.  All you told Detective Quinn was it didn't go down that way.

A: I told him—

Q: When you wanted to talk, you wanted to talk and then you lawyered up. That's what you did.

Q: They've got you in the room. They are giving you Miranda. You say, that's not how it happened. I want to tell you how it happened but I want a lawyer. So they take you all the way back to the jail cell and you say, well, what if that's not how it happened? And they say, do you want to talk? And you said, yeah, let's get this done. You walked all the way back with them to the interview room, they go to Mirandize [sic] you again and you said, nope. I want a lawyer. That's what you did, right?

A: Yes, I did.

Q: So other than saying to him that's not how it happened, you didn't want to tell them how it happened. You waited until now so that I wouldn't know, nobody would know. This is your story now?

A: I was telling them that there never was a robbery. That is not how it happened.

Q: I didn't hear that in the video. I just heard you say it didn't go down that way. ["]What if it didn't go down that way["] is how you said it and that was all you said.

A: Right. And I told them that there was a fight, when [the officer] was standing at that counter bandaging my arm for 45 minutes.

Q: You didn't get that far. Are you creating? Do you want to see the video?

A: No. I don't want to see the video.

Q: We can play the video. There is [sic] two of them. You can see, the jury can see that you didn't say squat about that.

(Tr. 7/24/12, pp. 71-73).

The Michigan Court of Appeals found the prosecutor did not impermissibly comment on Petitioner's post-*Miranda* silence. *See People v. Stewart*, 2014 WL 1233946, at *2. Rather, the prosecutor impeached Petitioner with the inconsistency between his trial testimony—that he told the police the victim pulled a gun on him during a fistfight—and his earlier statement to the police—that "It didn't go down that way." *Id.*

The Supreme Court's holding in *Doyle* does not apply to cross-examination that merely asks about prior inconsistent statements. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Id.* Here, Petitioner made his statement "It didn't go down like that" after being given his *Miranda* warnings. He never told the police that—as he later testified during trial—there had been a fistfight and the victim had pulled a gun on him. The prosecutor's questions about Petitioner's failure to mention the fistfight and the gun

to the police were thus not improper references to Petitioner's right to remain silent, but rather a permissible line of questioning to impeach his inconsistent testimony under *Anderson v. Charles, supra*; *see also Dye v. Hofbauer,* 197 F. App'x. 378, 386 (6th Cir. 2006)(prosecution's reference to defendant's omission of facts he testified to at trial from his pre-arrest conversations with investigators was not "an improper comment" on his silence). Accordingly, Petitioner is not entitled to habeas relief on this portion of his claim.

Petitioner next claims that the prosecutor impermissibly questioned him on recross-examination about whether he spoke with police officers with an attorney present. The Michigan Court of Appeals also rejected this claim, finding that Petitioner's counsel opened the door to further questioning concerning whether Petitioner spoke to the police with his attorney present by expressly questioning him about this issue on redirect examination. *People v. Stewart*, 2014 WL 1233946, at *3.

During redirect, defense counsel elicited testimony from Petitioner that he wanted to tell the police "everything that happened" with an attorney present, but that the investigators no longer wanted to speak

with him. (Tr. 7/24/12, pp. 78-79).  On re-cross, the prosecutor asked

Petitioner why he thought the police would no longer want to speak

with him:

> Q [prosecutor]: So after you hired Mr. Haddad [defense counsel] you didn't turn around and tell the police, ["N]ow I want to talk[;] I've got a lawyer,["] did you?
>
> A: He said it was [sic] be too late by the time I got my lawyer into my preliminary examination. They wouldn't want to hear my story again.
>
> Q: So ... it wasn't important enough to tell your story anymore?
>
> A: That's what they told me.
>
> (*Id.,* p. 79).

Petitioner opened the door to these questions by suggesting in his

testimony that he had wanted to speak with the police after he hired

his attorney, but that the police no longer wanted to speak with him.

Petitioner's testimony could have given the impression that he was

unable to tell the police his version of events after his arrest.  In *United*

*States v. Maverick*, 601 F. 2d 921, 932-933 (7th Cir. 1979), the Seventh

Circuit held that the prosecutor's references to the defendant's post-

*Miranda* silence were permissible to rebut the defendant's assertion on

direct examination that the police refused to let him explain his story

and told him to "shut up." *Id.* The Seventh Circuit ruled that defendant's testimony opened the door for the prosecution to discredit him by establishing that he had been given an opportunity to explain his conduct and did not take advantage of it. *Id.* at 933. *See also United States v. Butler*, 924 F. 2d 1124, 1129 (D.C. Cir. 1991)(prosecutor's references to Butler's silence permissible because of Butler's claim on direct examination that he never had an opportunity to explain his circumstances to the police); *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 868-69 (E.D. Mich. 2010)(testimony from police officers that defendant had invoked his right to counsel did not violate *Doyle*, where evidence was first elicited by his own attorney and then used by prosecution to rebut defendant's claims about the coercive nature of his interview).

Because Petitioner's testimony here also indicated he was not given an opportunity to explain his self-defense story to the police, references to his request for counsel were permissible to rebut that testimony. Petitioner is therefore not entitled to habeas relief on this claim.

Petitioner finally claims that the prosecutor impermissibly commented on his right to remain silent when he argued "I don't get

how an innocent man doesn't want to tell the police their [sic] side of the story." The Michigan Court of Appeals rejected this claim, ruling that the prosecutor's entire statement, "I don't get—I guess, I don't get how an innocent man leaves the scene. I don't get how an innocent man doesn't want to tell the police their [sic] side of the story[.]", when viewed in context, referred to petitioner's *pre*-arrest and *pre-Miranda* silence. *People v. Stewart*, 2014 WL 1233946, at * 3.

The Supreme Court has held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt, so long as the defendant did not expressly invoke his or her right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183-84, 191 (2013); *accord Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014).

When viewed in context, the prosecutor's comments referred to Petitioner's silence before he had been arrested or invoked his right to remain silent. Petitioner is therefore not entitled to relief on any of his claims that the prosecution violated his Fifth Amendment right to remain silent.

**B. Third Claim: Whether the evidence proved beyond a reasonable doubt that Petitioner was involved in a conspiracy and that he acted with the malice required for felony murder.**

Petitioner claims the evidence was insufficient to sustain his convictions for conspiracy to commit armed robbery and first-degree felony murder.

The critical inquiry regarding the sufficiency of the evidence is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This does not mean a court must "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

Moreover, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *accord Saxton v. Sheets*,

547 F.3d 597, 606 (6th Cir. 2008)(same)  Indeed it "may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

A federal habeas court may not overturn a state court's denial of a sufficiency of the evidence claim just because it disagrees with the state court's conclusion.  But rather only if the state court decision was an objectively unreasonable application of the *Jackson* sufficiency of the evidence standard. *Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  Thus the only question for this court is whether the Michigan Court of Appeals findings was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not re-weigh the evidence or re-determine the credibility of the witnesses whose

demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Petitioner first contends that there was insufficient evidence to convict him of conspiracy to commit armed robbery because there was no evidence he acted in concert with anyone.

The elements of armed robbery under Michigan law are: (1) an assault; (2) a felonious taking of property from the victim's presence or person; (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F. 2d 397, 400 (6th Cir. 1983); *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(*quoting People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and

conduct of the parties establish an agreement. *People v. Cotton*, 191

Mich. App. 377, 393; 478 N. W. 2d 681 (1991). A conspiracy may be

proven by circumstantial evidence or may be based on inference. *Id.*

Considering these requirements for establishing a conspiracy to

commit armed robbery, the Michigan Court of Appeals rejected

Petitioner's sufficiency of the evidence claim finding:

> There was sufficient evidence for a rational jury to have
> found that the prosecution proved each element of the
> conspiracy to commit armed robbery charge beyond a
> reasonable doubt. Defendant, May, and Lane agreed that
> defendant and Hamilton were both present at Lane's
> apartment on the night of December 18, 2011. May noticed
> a gun on a table inside the apartment and said that
> defendant wrapped it in a t-shirt later that evening.
> According to May, Hamilton admonished defendant to hide
> the gun "because if [Lane] come[s] home he might pick the
> [t]-shirt up" and discover the gun; Hamilton then hid the gun
> in her purse and left her purse on the table. After the
> shooting the following morning, May followed Hamilton into
> the apartment's bathroom, from where she called defendant
> and said, "Baby, I've been shot." May knew Hamilton had
> called defendant because defendant was "the only person
> [May] kn[e]w that she called [']baby.[']" Hamilton's cellular
> telephone records revealed that there were 28 separate
> contacts between her cellular telephone and Brown's cellular
> telephone between 2:01 p.m. on December 17, 2011, and 8:41
> a.m. on December 19, 2011, the morning of the shooting. In
> the same period, there were 127 separate contacts between
> Hamilton's phone and defendant's phone. In light of this
> evidence, it was reasonable for the jury to have accepted the
> prosecution's theory that defendant and Hamilton conspired

to lure Brown to the apartment complex so that defendant could rob him.

Defendant argues on appeal that, while May testified that defendant had a gun and discussed his intention to use it to rob someone, "there was no indication in those alleged statements that [Hamilton] was included in that plan or that the conversation involved her in any way." However, May's testimony established that Hamilton was not only aware that defendant carried a gun, but that she was concerned enough that Lane would discover it to conceal it in her purse. Defendant next argues that although cellular telephone records showed numerous calls and text messages between defendant and Hamilton and Hamilton and Brown before and after the shooting, those records do not indicate a conspiracy to rob Brown because the substance of those conversations was unknown. Even without knowing what was said, the volume and the timing of the calls—especially the time during which Hamilton's cellular telephone was connected to both defendant's cellular telephone and Brown's cellular telephone—permitted the reasonable inference that defendant and Hamilton conspired to rob Brown.

*People v. Stewart*, 2014 WL 1233946, at * 6-7 (internal citation omitted).

The evidence, when viewed in a light most favorable to the prosecution, established that Petitioner and Hamilton conspired to rob the victim and that Petitioner both displayed a gun the night before the robbery and discussed committing an armed robbery in Hamilton's presence. May's testimony indicated that Hamilton was aware that Petitioner carried a gun and was also concerned enough about Lane

finding and confiscating the gun that she hid it in her purse. The sheer number and timing of the calls between Hamilton's and Petitioner's cellular phones and Hamilton's phone and the victim's phone was sufficient circumstantial evidence for a rational trier of fact to conclude that Petitioner and Hamilton conspired to lure the victim to the apartment complex so that Petitioner could rob him at gunpoint.

In light of the foregoing, the Michigan Court of Appeals' determination that there was sufficient evidence to support Petitioner's conviction for conspiracy to commit armed robbery was not an unreasonable application of clearly established federal law that would entitle Petitioner to habeas relief on this part of his claim.

Petitioner next alleges that there was insufficient evidence of malice to support his conviction for first-degree felony murder.

Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *see also Carines,* 460 Mich. at 759 (internal citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.

Petitioner claims that there was insufficient evidence that he shot the victim during an armed robbery, arguing that there were several equally plausible alternative scenarios as to how the victim got shot: the gun could have discharged accidentally while Petitioner and the victim struggled, or the victim could have fired the gun because he was the last person who had possession of it.

A federal court reviewing a state court conviction on habeas review "with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of

the prosecution, and must defer to that resolution." *Cavazos,* 565 U.S. at 7 (quoting *Jackson v. Virginia,* 443 U.S. at 326).

The jury here chose to credit the direct and circumstantial evidence which suggested that Petitioner and Hamilton planned on robbing the victim at gunpoint at the apartment complex. They also chose to infer from the circumstantial evidence that Petitioner brought the gun and used it to rob the victim. The court cannot revisit that determination.

Given the jury's determination that Petitioner was the one who used a handgun during the robbery, the fact that he brought that handgun to the robbery supports an inference of malice. A number of cases have held that a defendant's participation in an armed robbery, while he or a co-defendant was armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur—in other words, with the requisite malice to support a conviction for first-degree felony-murder. *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003); *See also People v. Carines,* 460 at 759-60; *Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); *People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W.

2d 728 (1995); *overruled in part on other grounds People v. Mass,* 464

Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630,

635; 411 N.W. 2d 803 (1987); *Meade v. Lavigne ,* 265 F. Supp. 2d 849,

858-59 (E.D. Mich. 2003).

Finally, even if the gun went off accidentally during the struggle

between Petitioner and the victim, this would not negate a finding of

malice.  When Petitioner participated in an armed robbery, "he took

the risk that [the victim] might exercise [his] natural right of self-

preservation." *People v. Anderson*, 147 Mich. App. 789, 793; 383

N.W.2d 186 (1985).  Petitioner is thus not entitled to relief on his third

claim.

### C.  Fourth Claim:  Whether the trial court committed plain error by failing to provide a jury instruction on the lesser included offense of involuntary manslaughter.

Petitioner next contends that the trial judge violated his right to

due process by failing to instruct the jurors on the lesser included

offense of involuntary manslaughter.

The United States Supreme Court has declined to determine

whether the Due Process Clause requires that a state trial court

instruct a jury on a lesser included offense in a non-capital case. *See*

*Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(*citing to*

*Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)).   The Sixth Circuit

has read *Beck* to mean that "the Constitution does not require a lesser-

included offense instruction in non-capital cases." *Campbell v. Coyle,*

260 F. 3d 531, 541 (6th Cir. 2001).  Thus, the failure of a state trial

court to instruct a jury on a lesser included offense in a non-capital

case is not an cognizable error in this Circuit in federal habeas review.

*See Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002)(habeas petitioner

who had been convicted of first-degree murder in Michigan was not

entitled to habeas relief based upon the trial court's failure to instruct

on the lesser offense of involuntary manslaughter).  Petitioner is

therefore not entitled to relief on his fourth claim.

### D. Sixth Claim:  Whether Petitioner was denied effective assistance of counsel.

Lastly, Petitioner argues he was denied the effective assistance of

counsel.

Under *Strickland* the defendant must show a reasonable

probability that the result of the proceeding would have been different,

but for his counsel's deficient performance. *See Wong v. Belmontes*, 558

U.S. 15, 27 (2009).

This requires demonstrating first that the attorney's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment, and second a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 689, 694 (1984).

Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's references to his post-*Miranda* silence. Because, as discussed above, a prosecutor's questions and comments regarding a defendant's post-arrest silence are not improper where those questions were for the purpose of impeaching Petitioner's own testimony; and defense counsel's failure to object to references to that silence was not ineffective assistance of counsel. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 803 (E.D. Mich. 2009), *aff'd in part, rev'd in part on other grds*, 408 F. App'x. 873 (6th Cir. 2010). Moreover, because it was permissible for the prosecutor to introduce evidence of Petitioner's pre-arrest silence, counsel was not ineffective for failing to object to the admission of this evidence. *Abby v. Howe*, 742 F.3d at 228.

Petitioner also argues that trial counsel was ineffective for failing to object to the judge's instruction to the jurors concerning Hamilton's statements, because they were confusing as to whether those statements could be used against Petitioner or only against Hamilton.

The Michigan Court of Appeals addressing this claim found that the admission of Ms. Hamilton's extrajudicial statements to the police was harmless error. *People v. Stewart*, 2014 WL 1233946, at * 5. The Sixth Circuit, in reversing Judge Rosen's decision to grant habeas relief, likewise found that any error in the admission of Ms. Hamilton's statements to the police to be harmless error in light of the additional evidence of Petitioner's guilt. *See Stewart v. Trierweiler*, 867 F.3d at 636-38.

"The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Because the Michigan Court of Appeals and the Sixth Circuit both concluded that the admission of Hamilton's statements was harmless error, Petitioner cannot demonstrate that he was prejudiced by

counsel's failure to request a correct limiting instruction with respect to Hamilton's statements.

Petitioner finally claims that trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of involuntary manslaughter.

As the Michigan Court of Appeals noted in rejecting this claim, the jury was given an instruction on the lesser offense of second-degree murder but chose to find Petitioner guilty as charged of first-degree murder. *People v. Stewart*, 2014 WL 1233946, at * 12. Because the jury "rejected" the option of convicting Petitioner of second-degree murder it was "not reasonably probable" that they would have convicted him of the *even lesser* included offense of involuntary manslaughter, but for defense counsel's failure to request jury instructions on it. *Id.*

Because the lesser-included-offense instruction "stems from the need to give the jury a 'third option' where it would otherwise be presented with an all-or-nothing choice," and here there was no such all-or-nothing choice, but rather there was a third option available of convicting Petitioner of second-degree murder, Petitioner has not demonstrated prejudice. *United States v. Valencia,* 188 F. App'x. 395,

401-02 (6th Cir. 2006)(no prejudice arose from defense counsel's failure to request a lesser-included-offense instruction for possession of a smaller amount of drugs where the form required the jury to find that defendant's offense actually involved a threshold amount).

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that:

(1)    The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2)    A certificate of appealability is **DENIED.**

(3)    Leave to appeal *in forma pauperis* is **DENIED**.

s/Terrence G. Berg
TERRENCE G. BERG
**Dated: July 31, 2018**          UNITED STATES DISTRICT JUDGE